IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALEXANDER JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:08cv368-WC |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

Plaintiff Alexander Johnson was previously found disabled as of March 21, 1988, and awarded benefits for such disability.  During a periodic review in July, 2004, it was determined that Plaintiff's condition had improved and that he was no longer disabled.  Plaintiff filed a Request for Reconsideration of Disability Cessation which was denied.  Plaintiff then requested a hearing before an Administrative Law Judge (ALJ).  Following the hearing, the ALJ denied Plaintiff's claims and upheld the cessation of disability benefits.  The Appeals Council rejected a subsequent request for review.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the Court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. #13); Def.'s Consent to Jurisdiction (Doc. #12). Based on the Court's review of the record and the briefs of the parties, the Court AFFIRMS the decision of the Commissioner.

## II.   STANDARD OF REVIEW

The continued receipt of disability benefits is subject to periodic review. 20 C.F.R. § 404.1594(a). Forty-two U.S.C. § 423(f) provides that disability benefits may be discontinued "on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling" provided that such a finding is supported by "substantial evidence" of one of the following: 1) "medical improvement" to the claimant's impairments[2] combined with the claimant's ability to work; 2) a lack of medical improvement but that the claimant's residual functional capacity (RFC) permits gainful activity due to "advances in medical or vocational therapy or technology" or that the claimant has successfully "undergone vocational therapy" which enables the performance of "substantial gainful activity;" 3) that, as a result of "new or improved diagnostic techniques or evaluations, the individual's impairment or combination of impairments is not as disabling as it was considered to be at the time of" prior evaluations; or 4) that a prior determination of disability was in error. 42 U.S.C. § 423(f).

To make this determination, the Commissioner employs an eight-step, sequential evaluation process. *See* 20 C.F.R. § 404.1594. The eight-step process seeks to determine:

(1)   Is the person presently engaging in substantial gainful activity?

(2)   If not, does the claimant have an impairment or combination of impairments

---

[2]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

>   which meets or equals one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
>
> (3)  If not, has there been "medical improvement" as to the claimant's impairment(s)?
>
> (4)  If there has been medical improvement, is such related to the claimant's ability to do work, *i.e.*, has there been an increase in the claimant's RFC?
>
> (5)  If there has been no medical improvement, or if any such improvement is unrelated to the ability to do work, do any of the exceptions of 20 C.F.R. § 404.1594 (d) & (e)[3] apply?
>
> (6)  If medical improvement related to the claimant's ability to work is found, or if one of the first group of "exceptions" - pertaining to a lack of medical improvement but success in or the availability of vocational therapy or technology - applies, are the claimant's impairments, or combination of impairments, severe?
>
> (7)  If such impairment(s) is severe, does the claimant's RFC allow for the performance of past relevant work?
>
> (8)  If the claimant cannot perform past relevant work, considering claimant's RFC, age, education, and past work experience, can the claimant perform other work existing in significant numbers in the national economy?

To the extent it may prove relevant to the disposition of this matter, the allocation of the burden of proof appears muddled in cases such as this. The Eleventh Circuit does not appear to have clearly addressed this issue. The Court of Appeals for the Fifth Circuit has previously endorsed the view that "[i]n a case in which benefits have been terminated, as in a case in which benefits have been denied, the burden of proving disability is on the claimant, not on the [Government]." *Crosby v. Schweiker*, 650 F.2d 777, 778 (5th Cir. 1981).[4] Other Circuits have clearly placed the burden on

---

[3]  These "exceptions" correlate with the provisions of 42 U.S.C. § 423(f)(2)-(4) and are discussed *supra*.

[4]  In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the

the Commissioner. *See, e.g.*, *Murray v. Heckler*, 722 F.2d 499, 500 (9th Cir. 1983). Indeed, even the Fifth Circuit appears to have retreated from its prior allocation of the burden of proof on the claimant. *See Wilson v. Barnhart*, 129 Fed. App'x 912, 914 (5th Cir. 2005). Other district courts in this Circuit have similarly allocated the burden of proof in termination cases on the Commissioner. *See Cross v. Astrue*, 2009 WL 1808409 at *6 (N.D. Ala. June 25, 2009). Accordingly, based on this Court's review of the relevant statutes and regulations, as well as available case law, this Court finds that the burden of proof rests on the Commissioner throughout the eight-step process.[5]

To perform steps three through six, the ALJ must first determine whether the claimant has experienced "medical improvement," which is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). Medical improvement is determined by comparing "prior and current medical evidence which must show there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." 20 C.F.R. § 404.1594(c)(1). Medical improvement related to the claimant's ability to work is defined as medical improvement coupled with "an increase in [the claimant's] functional capacity to do basic work activities." 20 C.F.R. § 404.1594(b)(3). Medical improvement which is not related to the claimant's ability to do work consists of medical

---

former Fifth Circuit handed down prior to September 30, 1981.

[5] Of course, to the extent Plaintiff alleges error in the ALJ's findings unrelated to cessation of benefits due to medical improvement, the above analysis does not apply. Thus, Plaintiff's claim about the ALJ's purported error in failing to find his anxiety disorder a severe impairment - separate from his leukemia - is subject to the traditional allocation of the burden of proof on Plaintiff.

improvement but no corresponding increase in the claimant's functional capacity to do basic work activities.  20 C.F.R. § 404.1594(b)(2).

To complete the eight-step process, the ALJ must also determine the claimant's RFC.  RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004).  It also can contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  In determining whether the claimant may perform jobs existing in significant numbers in the national economy, the ALJ may use the Medical Vocational Guidelines[6] (grids) or call a vocational expert (VE).  *Id*. at 1239-40.  The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Id.*, at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

The Court's review of the Commissioner's decision is a limited one.  This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision

---

[6]   *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.  . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.   ADMINISTRATIVE PROCEEDINGS

While serving in the military in the 1980s, Plaintiff was diagnosed with leukemia and found disabled within the meaning of the Social Security Act. (Tr. 13). His disability status was continued in separate determinations in 1990 and 2000. (Tr. 13). In July, 2004, it was determined that Plaintiff was no longer disabled and the instant proceedings began.

Plaintiff was forty-five years old at the time of the hearing before the ALJ. (Tr. 462). Plaintiff completed high school and some vocational training in the military. (Tr. 462). Plaintiff's past relevant work experience was as a mechanic. (Tr. 19). Following the administrative hearing, and employing the eight-step process, the ALJ found that, through the date marking the end of Plaintiff's disability, July 31, 2004, Plaintiff had not engaged in substantial gainful activity. (Step 1) (Tr. 15). At Step 2, the ALJ found that Plaintiff does not have an impairment or combination of impairments of listing-level severity. (Tr. 15). At Step 3, the ALJ determined that Plaintiff has experienced "medical improvement." (Tr. 15). The ALJ next found that Plaintiff's medical

improvement is related to his ability to do work. (Step 4) (Tr. 16). The ALJ then found that, although Plaintiff's impairment of leukemia was no longer of listing level severity, Plaintiff nevertheless suffers from the severe impairments of "hypertension, migraine headaches, [and] GERD."[7] (Step 6) (Tr. 15-16). Next, the ALJ found that, as of July 31, 2004, Plaintiff possesses the RFC to "perform the full range of light work activity on a sustained basis." (Tr. 16). The ALJ determined, however, that Plaintiff's RFC precluded him from performing his past relevant work. (Step 7) (Tr. 19). Finally, after consulting with a vocational expert, the ALJ determined that, given Plaintiff's RFC, age, education, and work experience, Plaintiff is "able to perform a significant number of jobs in the national economy." (Step 8) (Tr. 19). Accordingly, the ALJ determined that Plaintiff's "disability ended as of July 31, 2004." (Tr. 20).

## IV.   PLAINTIFF'S CLAIMS

Plaintiff alleges two errors requiring reversal of the ALJ's decision: (1) "the ALJ erred as a matter of law when he found medical improvement;" and (2) "the ALJ erred as a matter of law when he found [Plaintiff's] impairment of panic/anxiety attacks were [sic] not severe." Pl.'s Brief (Doc. #15) at 1. The Court will address each of Plaintiff's claims below.

## V.   DISCUSSION

### A.   *The ALJ's finding of "medical improvement."*

Plaintiff contends that, contrary to the ALJ's determination, Plaintiff's disability "continues because there has been no medical improvement as he still suffers from the residual effects of his leukemia." *Id.* at 4. Plaintiff argues the ALJ's finding that, as of July 31, 2004, Plaintiff's leukemia

---

[7]   "GERD" is the commonly used acronym for gastroesophageal reflux disease.

decreased in medical severity is not supported by substantial evidence. In support, Plaintiff asserts that relevant medical evidence confirms Plaintiff's statements about the severity and disabling nature of the side effects caused by medications which Plaintiff takes to treat his leukemia. These side effects are alleged to include "diarrhea, nausea, fatigue, back pain, insomnia, and anxiety." *Id.* at 6. Moreover, Plaintiff asserts that medications he takes to control the panic attacks caused by his leukemia also cause him to feel "sluggish and weak." *Id.* Plaintiff also suggests that the "MIRS Assessment Form" completed by disability specialist Frances Pardue supports a finding of no medical improvement because the reviewer checked a box corresponding with a finding that "Medical Improvement has not occurred." (Tr. 209).

Defendant maintains that "a comparison of the evidence relating to Plaintiff's condition on and before the comparison date (October 2000), with evidence of his condition after that date, until the date that his disability ceased (July 2004), establishes medical improvement related to his ability to do work." Def.'s Memo. In Supp. Of Comm.'s Dec. (Doc. #18) at 10. Defendant asserts that the broad spectrum of medical evidence pertaining to Plaintiff's leukemia, from the comparison point to July, 2004, indicates, *inter alia*, that: Plaintiff's leukemia was in remission; his treatment regimen became less aggressive while improving his condition and producing controllable side effects; his physical examinations were normal; he denied pain and depression; he had no physical or cognitive limitations; and his "mental functioning was unimpaired." *Id.* Defendant also asserts that Plaintiff's reliance on the disability specialist's finding of no medical improvement is misplaced, contending that the specialist simply committed a "typographical-type error" in checking the box

corresponding with that finding. *Id.* at 12.[8]

In this instance, substantial evidence supports the ALJ's finding of "medical improvement." As noted above, "medical improvement" occurs due to "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). The record evidence supports a finding that Plaintiff's leukemia is in "full" and "complete" remission and that his treatments for the disease - including the cessation of the more aggressive and invasive Interferon injections - have been substantially successful with few serious side effects other than occasional, and treatable, diarrhea. *See, e.g.,* (Tr. 150, 160, 233, 240, 244-45, 252, 255, 257). Moreover, the ALJ relied upon a reviewing medical source opinion that Plaintiff's condition had improved, (Tr. 201, 203), and the lack of any other physician opinion that Plaintiff's leukemia remained disabling. (Tr. 18). Thus, it can scarcely be argued that Plaintiff's once disabling medical condition - leukemia - had not improved within the meaning of 20 C.F.R. § 404.1594(b)(1).

Plaintiff also contends that his anxiety and panic attacks, asserted to result from his leukemia and subsequent treatments for the disease, constitute "residual" effects of his disabling condition which, themselves, sustain Plaintiff's continued disability. At the hearing before the ALJ, Plaintiff testified that he suffers from panic attacks that are "worse then [sic] what I've actually told the doctors because I just don't, I just feel very uncomfortable telling him about it because it seems like

---

[8] Defendant suggests that, when the assessment form "is read as a whole, it clearly establishes that both [the disability specialist] and reviewing medical sources found that medical improvement had occurred, and that [the disability specialist] inadvertently checked the wrong box on the last page of the cited document." Def.'s Memo. In Supp. Of Comm.'s Dec. (Doc. #18) at 12-13.

I guess a crazy person telling you this or something." (Tr. 465). Plaintiff stated that he was "experimenting" with three different medications to control the panic attacks, and that the medications seemed to help "a little." (Tr. 466). Plaintiff clarified that the panic attacks occur mostly when he is driving, especially at night. (Tr. 466).[9]

While Plaintiff's subjective complaints about anxiety and reports of panic attacks are well documented in the record, there is little medical evidence of the severity of the attacks. Likewise, no physician or psychologist has deemed them disabling. Dr. Ghostley opined that "[w]ith psychotherapy, [Plaintiff's] prognosis, with regard to alleviating fear, is good," and that Plaintiff's ability to function "in a work setting is unimpaired." (Tr. 186). The Psychiatric Review Technique completed by a DDS physician limited Plaintiff's anxiety disorder to "specific phobia, situational type," and concurred with Dr. Ghostley's opinion that the condition "does not significantly affect the claimant's functioning." (Tr. 192, 199). The DDS physician also considered Plaintiff's subjective allegations about the severity of his anxiety disorder to be "only partially credible." (Tr. 199). There is evidence in the record that the severity of Plaintiff's panic attacks was alleviated with medication, or the cessation of his Interferon therapy, such that Plaintiff contemplated discontinuing the anti-anxiety medication Paxil due to a concern that it rendered him impotent. (Tr. 170, 165-66, 158). Later, Plaintiff resumed taking Paxil and once again found his situational anxieties alleviated. (Tr. 326, 322, 316). Still later, Plaintiff again abandoned Paxil, due to purported sexual side effects, and once again reported anxiety attacks related to driving. (Tr. 314).

---

[9] Plaintiff also conveyed this characterization of his panic attacks to Dr. Ghostley during the consultative psychological examination, (Tr. 184), and in numerous instances to staff at the Veterans Administration facilities in which he received treatment.

The picture that emerges after a global view of the record is that Plaintiff has often complained of situational phobias and anxiety attacks, but that these anxieties can be successfully alleviated when studiously treated with prescribed medications. Thus, there is substantial evidence in the record that Plaintiff's panic attacks/anxiety disorder is not a disabling "residual effect" of his leukemia. Accordingly, the ALJ's determination that Plaintiff has experienced medical improvement is supported by substantial evidence.

> **B.     The ALJ's finding that Plaintiff's panic attacks/anxiety disorder is not a severe impairment.**

Reciting the same evidence presented in support of his contention that his panic attacks/anxiety disorder is a disabling "residual effect" of his leukemia, Plaintiff also contends that the ALJ reversibly erred in failing to find the condition a severe impairment. Defendant maintains that the ALJ's decision is supported by substantial evidence.

While there are numerous instances in the record of Plaintiff's complaints about his anxiety disorder and treatment responses from health care providers, a provider's diagnosis or treatment of a claimed impairment does not render it severe. An impairment is severe only if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c); *Edwards v. Heckler*, 736 F.2d 625, 629 (11th Cir. 1984). As discussed above, the ALJ was confronted with copious evidence that Plaintiff's situational panic attacks/anxiety disorder is not a severe impairment. This evidence includes, *inter alia*, the consultative psychological examination by Dr. Ghostley, the Psychiatric Review Technique, medical records demonstrating generally successful treatment of the condition with prescribed medications, evidence that Plaintiff voluntarily abandoned some of his prescribed treatment for reasons unrelated to its efficacy, and

evidence of Plaintiff's daily activities, including driving. It is further relevant that the ALJ found Plaintiff's subjective complaints about the frequency and severity of his panic attacks to be only partially credible.[10] Finally, the ALJ's expression of Plaintiff's RFC and limitation to light duty, as well as the corresponding findings about the availability of jobs based on Plaintiff's RFC, does not encompass the performance of any duties likely to trigger Plaintiff's situational anxieties, like driving or climbing to unusual heights. Accordingly, substantial evidence supports the ALJ's determination that Plaintiff's panic attacks/anxiety disorder is not a severe impairment.

## VI.   CONCLUSION

The Court has carefully and independently reviewed the record and concludes the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

DONE this 6th day of July, 2009.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

---

[10]   Plaintiff makes no discrete challenge to the ALJ's credibility determination.